IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IFEANYI NWANI, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 17-3017 |
| DOMMONIEKE GREENE, et al., | |
| Defendants. | |

## OPINION

**Slomsky, J.**                                                                 **May 30, 2018**

## I.    INTRODUCTION

Plaintiff Ifeanyi Nwani, proceeding pro se, brings this action alleging violations of his civil rights arising from his arrest and subsequent incarceration at the George W. Hill Correctional Facility against the following Defendants: Target Store ("Target")[1]; Dommonieke Greene, an undercover security employee of Target; Police Officer Daniel Boyd; Police Officer Justin Laird; the Springfield Police Department; Health Services Administration of the George W. Hill Correctional Facility; Deputy Warden of Operation (John Doe #1); Warden (John Doe #2); Springfield Township; and the Upper Darby Police.  (Doc. No. 22.)  Nwani, still an inmate at the George W. Hill Correctional Facility, alleges constitutional violations under 42 U.S.C. § 1983, as well as state law claims.  He seeks compensatory and punitive damages in this case. (Id. at 6.)

---

[1]    Defendant Target Corporation noted that Plaintiff's Amended Complaint incorrectly identified Target Corporation as "Target Store."  (Doc. No. 26.)  For the remainder of this Opinion, the Court will refer to this Defendant as "Target."

Before the Court are two Motions to Dismiss, one filed by Defendants Officer Daniel Boyd, Springfield Township, and the Springfield Police Department ("Springfield Defendants") (Doc. No. 25) and the other filed by Defendants Dommonieke Greene and Target ("Target Defendants") (Doc. No. 26).[2]  The Motions are now ripe for disposition.[3]  For reasons that follow, the Court will grant Defendants' Motions to Dismiss (Doc. Nos. 25, 26.)

## II.  FACTUAL AND PROCEDURAL BACKGROUND[4]

On the evening of May 18, 2017, Plaintiff was shopping at the Target[5] located on Baltimore Pike in Springfield, Pennsylvania and removed from a shelf a CHI flat iron.[6]  (Doc. No. 22 at 1.)  Because there were no shopping baskets available, Plaintiff placed the merchandise in his own white plastic shopping bag.  (Id.)  The item was visible in the white bag and "was not concealed."  (Id.)  He then walked towards the checkout area and looked to see whether there was a bus outside.[7]  (Id.)  At the same time, Defendant Dommonieke Greene, who was dressed in plain clothes, grabbed Plaintiff's shirt and shoved him back into the store.  (Id. at 1-2.)  Greene

---

[2]  A review of the docket in this matter shows that Defendants Health Service Administration, Deputy Warden of Operation (John Doe #1), Warden (John Doe #2), and the Upper Darby Police Department were not properly served.  Irrespective of the service requirements under Rule 4(m) of the Federal Rules of Civil Procedure and in light of the fact that Plaintiff is proceeding pro se, the Court will nonetheless analyze Plaintiff's claims against these Defendants.

[3]  In reaching a decision, the Court has considered the Amended Complaint (Doc. No. 22), the Springfield Defendants' Motion to Dismiss (Doc. No. 25), the Target Defendants' Motion to Dismiss (Doc. No. 26), Plaintiff's Opposition to Defendants' Motions to Dismiss (Doc. No. 27), and the Target Defendants' Response in Support of their Motion to Dismiss (Doc. No. 28).

[4]  The facts are derived from the Amended Complaint. (Doc. No. 22.)  The Court has made a careful effort to piece the sequence of events logically for the purposes of this Opinion.

[5]  Target is a retailer with multiple locations nationwide.

[6]  CHI is a manufacturer of hairstyling products, including flat iron tools to straighten hair.

[7]   Plaintiff does not specify his approximate distance from the store's entrance or exit.

did not announce who he was or that he was employed by Target as an undercover security officer.  (Id.)  Shocked and frightened, Plaintiff left the store without the flat iron that he intended to purchase.  (Id. at 2.)

Greene contacted the Springfield Police Department and spoke to Defendant Officer Daniel Boyd about the incident with Plaintiff.  (Id.)  Plaintiff alleges that Greene falsely said that Plaintiff took the flat iron with him[8] and that he pushed Greene aside to flee the store.  (Id.)  Greene also mentioned that Plaintiff had been involved in a previous theft.  (Id.)

Outside of Target, Officer Boyd approached Plaintiff from behind in a marked police vehicle.  (Id. at 3.)  Defendant Officer Justin Laird then emerged from the vehicle and chased after Plaintiff "in an aggressive and assertive matter."[9]  (Id.)  Officer Laird "body slammed Plaintiff to the ground" while using a racial epithet and pinned Plaintiff down until other police officers arrived.  (Id.)  Officer Boyd and other officers then handcuffed Plaintiff, who asked for medical assistance for the injuries he sustained during his altercation with Laird.  (Id.)  Plaintiff claims this request was ignored by Springfield law enforcement officers.  (Id.)

Next, he was taken to the Springfield police station, where he collapsed and was confined to a cell, and "where he suffered from cold to his lungs, and severe pain to his head, back, and ribs."  (Id.)  On or about May 19, 2017, Plaintiff had a preliminary arraignment on charges filed against him.  (Id.)  He pled guilty to retail theft and resisting arrest. Commonwealth v. Nwani,

---

[8]  Greene's statement contradicts Plaintiff's statement that he "did not take possession of the Target store property that he intend[ed] to purchase."  (Doc. No. 22 at 2.)

[9]  In the Amended Complaint, Plaintiff alleges that Justin Laird "is a citizen but not law enforcement."  (Doc. No. 22 at 3.)  In contrast, a Service Process Receipt and Return form completed by Plaintiff states: "Justin Laird works at Springfield Township, and also a very close friend to Officer Daniel Boyd . . . ."  (Doc. No. 8.)  In light of the facts alleged, particularly that Laird was in the police vehicle driven by Officer Boyd, that Officer Boyd directed Laird to pursue Plaintiff, and that Laird restrained Plaintiff, the Court will consider Laird to be a law enforcement officer employed by the Springfield Police Department.

Cr. A. No. CP-23-CR-3367-2017 (Pa. Ct. Com. Pl. Del. Cty., Aug. 22, 2017) (hereinafter "Ct. Com. Pl. Docket"). Plaintiff was then transferred to the George W. Hill Correctional Facility in Thornton, Pennsylvania. Plaintiff notified the prison's Health Service Administration of the injuries he sustained during his arrest, but no response was given. (Doc. No. 22 at 3.) When he arrived at the prison Intake Process Unit, Plaintiff observed that it was "overcrowded and unsanitary." (Id.) He was temporarily confined in a unit with over twenty other inmates and had to sleep on the floor adjacent to a toilet, which was utilized by the inmates. (Id.) From May 19 to 22, 2017, Plaintiff was not permitted to take a shower and was strip-searched twice. (Id.)

On July 3, 2017, Plaintiff filed his first Complaint against Defendants Dommonieke Greene, Target Store, Daniel Boyd, the Springfield Police Department, Justin Laird, the Health Services Administration, Deputy Warden of Operation (John Doe #1) and Warden (John Doe #2). (Doc. No. 4.) On September 28, 2017, Defendants Daniel Boyd and the Springfield Police Department filed a Motion to Dismiss. (Doc. No. 14.) On the same day, Defendants Target and Dommonieke Greene also filed a Motion to Dismiss. (Doc. No. 15.)

On October 13, 2017, Plaintiff filed an Amended Complaint against the same parties and also added Springfield Township and Upper Darby Police as Defendants.[10] (Doc. No. 18.) On October 20, 2017, without leave of Court, Plaintiff filed another Amended Complaint against the same Defendants named in the October 13, 2017 Amended Complaint. (Doc. No. 22.) However, upon review of both versions of the Amended Complaints, it is evident that the facts and

---

[10] The facts alleged in the original Complaint (Doc. No. 4), the October 13, 2017 Amended Complaint (Doc. No. 18), and an October 20, 2017 Amended Complaint (Doc. No. 22) remain substantially the same. The addition of the Springfield Police Department presumably allows Plaintiff to advance a theory of respondeat superior to his claims. Meanwhile, the inclusion of the Upper Darby Police Department appears to relate to new facts set forth in both versions of his Amended Complaint. The new facts refer to Springfield law enforcement contacting the K-9 unit of the Upper Darby Police Department to locate Plaintiff after he fled from Target.

allegations are not substantially different. Accordingly, the Court will rely upon the October 20, 2017 second Amended Complaint (Doc. No. 22) for the purposes of this Opinion.

Based on the facts alleged, the Court gleans that the second Amended Complaint filed October 20, 2017 contains the following counts pursuant to 42 U.S.C. § 1983: In Count I, Plaintiff asserts Fourth Amendment claims of false arrest and malicious prosecution against Officers Boyd and Laird, the Springfield Police Department, and Springfield Township. In Count II, Plaintiff asserts a violation of the equal protection laws under the Fifth and Fourteen Amendments of the United States Constitution, in the form of racial profiling, against Officers Boyd and Laird and the Springfield Police Department. Count III asserts a municipal liability claim against Springfield Township. In Count IV, Plaintiff claims that Greene and Target violated his Fourth Amendment rights. In Count V, he asserts a Fourth Amendment claim of false imprisonment and an Eighth Amendment claim of deliberate indifference to his medical needs and cruel and unusual punishment against the Warden, Deputy Warden, and Health Services Administration of the George W. Hill Correctional Facility. Aside from monetary and punitive damages, Plaintiff also requests a "stay on his previous lawsuit"[11] and "a federal investigation on the above defendants."[12] (Doc. No. 22 at 6.)

III. STANDARD OF REVIEW

The motion to dismiss standard under Rule 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544. "To survive

---

[11] Plaintiff has another active case before this Court, Nwani v. Molly, et al., Case No. 17-cv-3634. A separate Opinion and Order will be issued in that case.

[12] This Court does not have jurisdiction or authority over the United States Department of Justice to compel a federal investigation.

dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

## IV.     ANALYSIS

Defendants Officer Daniel Boyd, Springfield Township, the Springfield Police Department, Target, and Dommonieke Greene move to dismiss the second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[13] (Doc. Nos. 25, 26.) Defendants submit that Plaintiff's claims regarding his arrest and prosecution are barred under Heck v. Humphrey, in which the United States Supreme Court held that an inmate can only seek damages for an unconstitutional conviction or imprisonment under 42 U.S.C. § 1983 ("Section 1983") if their conviction or sentence was reversed on appeal or otherwise invalidated. 512 U.S. 477, 487 (1994). Defendants also argue that Plaintiff fails to state a claim against them with respect to any

---

[13] Defendants Justin Laird, Health Service Administration, Deputy Warden (John Doe #1), Warden (John Doe #2), and Upper Darby Police have not been properly served in this case. A discussion related to these Defendants will follow.

of his Section 1983 claims because he has not adequately pled that his Fourth, Fifth, Eight, and Fourteenth Amendment rights were violated.

**A. Plaintiff Is Barred From Raising Section 1983 Claims Against All Defendants**

Because Plaintiff has not set forth any facts to show that his conviction or imprisonment has been reversed, expunged by executive order, or otherwise declared invalid or called into question, he is precluded from raising Section 1983 claims against all Defendants.[14]

To recover damages for an alleged unconstitutional conviction or imprisonment under Section 1983, "a plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humprey, 512 U.S. 477, 486-87 (1994). In Heck, petitioner filed a Section 1983 suit while the appeal from his conviction was still pending. Id. at 478-79. The Supreme Court upheld the dismissal of the Section 1983 action, holding that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." Id. at 484. The purpose of this requirement was to avoid

> parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant . . . succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

Id. (citation omitted). Accordingly, a court must dismiss a Section 1983 suit for damages "unless there was no conviction or sentence or 'the plaintiff can demonstrate that [a] conviction

---

[14] In evaluating Plaintiff's claims under Section 1983, the Court takes judicial notice of matters of public record, including documents that are outside of the pleadings. See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F. 3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

or sentence has already been invalidated.'"  Curry v. Yachera, 835 F.3d 373, 378 (3d Cir. 2016) (quoting Heck, 512 U.S. at 487).

In the instant case, Plaintiff has not set forth any facts to show that his conviction or sentence has been invalidated or otherwise reversed.  Moreover, upon review of the docket in his state court proceedings, the Court notes that his conviction was not overturned.  (Ct. Com. Pl. Docket.)  In fact, on August 22, 2017, Plaintiff pled guilty before the state court to the charges of retail theft and resisting arrest.  (Ct. Com. Pl. Docket at 2, 5.)  Under Heck v. Humphrey, a guilty plea is "sufficient to bar a subsequent § 1983 claim."  Gilles v. Davis, 427 F.3d 197, 219 n.8 (3d Cir. 2005).  Thus, in accordance with Heck, Plaintiff's Section 1983 claims are barred because his sentence has not been invalidated and will be dismissed.

### B.  Even If Plaintiff's Section 1983 Claims Were Not Barred, Plaintiff Still Fails to State a Section 1983 Claim Against the Springfield Police Officers and Springfield Police Department

Apart from the fact that Plaintiff is barred from raising Section 1983 claims under Heck, Plaintiff's claim for false arrest and malicious prosecution will be dismissed because Officers Boyd and Laird had probable cause to arrest Plaintiff for retail theft and therefore did not violate Plaintiff's rights under the Fourth Amendment.  He has also not shown how Defendants violated his rights under the equal protection clause of the Fifth and Fourteenth Amendments.

### 1.  The Police Officers Had Probable Cause to Arrest Plaintiff

Given that Officer Boyd and the other members of the Springfield Police Department who were involved in Plaintiff's arrest acted under the color of the law, the relevant inquiry is whether they deprived Plaintiff of a constitutional right.  In Count I, Plaintiff alleges that they violated his Fourth Amendment right when they relied upon Dommonieke Greene's allegations without their own independent evidence to conclude that Plaintiff was acting unlawfully.  (Doc.

No. 22 at 2.) He further alleges that the officers "were motivated by racial profiling and discrimination against minorities." (Doc. No. 22 at 2.)

Under the Fourth Amendment, police officers are required to have probable cause before making an arrest. Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972); Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010). A police officer has probable cause to arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F. 3d 782, 788 (3d Cir. 2000) (quoting Orsatti v. N.J. State Police, 71 F. 3d 480, 482 (3d Cir. 1995)). A court must evaluate the totality of circumstances to determine whether the objective facts available to the arresting officers were sufficient to justify a reasonable belief that a suspect had committed or was committing a crime. Merkle, 211 F.3d at 789.

Based on the allegations in the second Amended Complaint, Dommonieke Greene of Target contacted Officer Boyd after his incident with Plaintiff at the store.[15] Officer Boyd had no reason to disbelieve Greene's statements, particularly because he was a security guard employed by Target. Officer Boyd was outside Target and located Plaintiff, whom he reasonably believed committed retail theft based on the source and the information provided.[16] Officer Boyd identified Plaintiff and pursued him in his police vehicle.

The police officer relied on the facts relayed to him by Greene and he had sufficient probable cause to believe the retail theft crime occurred. He was not obligated to conduct a full-

---

[15] The claims against Greene and Target are discussed later in this Opinion.

[16] Based on the facts alleged in Plaintiff's First Amended Complaint, it is unclear whether Officer Boyd arrived at Target after speaking with Greene, or if he was already there. Whether Officer Boyd was or was not near Target is not material to the analysis.

scale investigation before making an arrest. Statements made to a police officer from a source whom he finds credible can be sufficient to provide probable cause. The officer is not required to conduct an extensive investigation and identify other witnesses. See Merkle, 211 F.3d at 790 n. 8 (finding that a detective "was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed.").

Since Plaintiff has failed to show his arrest was made without probable cause, he cannot proceed on his malicious prosecution claim. See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) ("Under Pennsylvania law, the elements of a malicious prosecution claim are that the defendant (1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff."). Thus, Plaintiff's Fourth Amendment claims against Officer Boyd, Officer Laird, and the Springfield Police Department fail because the police officers had probable cause to arrest Plaintiff.

### 2. Defendants Officer Boyd and Officer Laird Are Entitled to Qualified Immunity Under Section 1983

The claims against Defendants Officer Boyd and Officer Laird will also be dismissed because these Defendants are entitled to qualified immunity. Their actions did not violate clearly established law.

In a suit for damages, state officials are entitled to qualified immunity unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Mirabella v. Villard, 853 F.3d 641, 648 (3d Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).

Here, with respect to the first prong, the Court has already concluded that Defendants Officer Boyd and Officer Laird have not committed any constitutional violations. Thus, for this reason alone, they are entitled to qualified immunity and dismissal of the constitutional claims.

The Court's analysis could end now because a court is not required to analyze the second step of the qualified immunity test if no constitutional violation occurred. <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007) (explaining that a court must only proceed to the second step of the qualified immunity analysis if it finds a constitutional violation); <u>see also</u> <u>Reedy v. Evanson</u>, 615 F.3d 197, 223-24 (3d Cir. 2010) (stating that no further inquiry is required if no constitutional violation is found). However, the Court will nonetheless briefly discuss the second prong.

Under the second prong of the test, qualified immunity applies "unless the official's conduct violated a clearly established constitutional right." <u>Pollock v. City of Philadelphia</u>, 403 F. App'x 664, 669 (3d Cir. 2010) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)). A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Woodlen v. Jimenez</u>, 173 F. App'x 168, 170 (3d Cir. 2006) (per curiam) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." <u>Davenport v. Borough of Homestead</u>, 870 F.3d 273, 281 (3d Cir. 2017) (quoting <u>Ashcroft</u>, 563 U.S. at 741 (2011)). "The dispositive question is whether the violative nature of <u>particular</u> conduct is clearly established. This inquiry must be taken in light of the specific context of the case, not as a broad general proposition." <u>Id.</u> (emphasis in original) (quoting <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (per curiam)).

The actions of Officer Boyd and Officer Laird during Plaintiff's arrest were not unlawful. They acted in reliance on the information supplied by Dommonieke Greene. As discussed previously, they had probable cause to arrest him and there is no evidence to show that their

actions were racially motivated.[17]    Therefore, because they did not violate Plaintiff's constitutional rights nor did they violate a clearly established right, these Defendants are entitled to qualified immunity.

### 3.    Defendants Springfield Police Department Cannot Be Sued

With respect to the Springfield Police Department, all claims against this Defendant must be dismissed because "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  Padilla v. Twp. of Cherry Hill, 119 F. App'x 272, 278 (3d Cir. 2004) (citing Debellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)).

### 4.    Plaintiff Fails to Raise a Claim Alleging Violations of Equal Protection

Construing Plaintiff's second Amended Complaint liberally in Count II, Plaintiff alleges that Defendants Officer Boyd, the Springfield Police Department, and Justin Laird violated his right to equal protection under the Fifth and Fourteenth Amendments to the United States

---

[17] At the end of the second Amended Complaint (Doc. No. 22), Plaintiff raises the issue of whether excessive force was used during his arrest.  He alleges that Officer Laird "body slammed" him to the ground and "rested his weigh[t] on Plaintiff['s] right ribs."  (Id. at 3.) Plaintiff also complains that Officer Boyd and other unnamed Springfield police officers "offensively roughshod over Plaintiff as they twisted his arm and handcuffed him.  The Springfield law enforcement agents would tighten the cuffs to the degree that caused Plaintiff pain . . . ."  (Id. at 4.)

Though he disputes the veracity of Dommonieke Greene's statements, Plaintiff admits that the Springfield police officers relied upon information from Greene that Plaintiff had been involved in a previous theft, that Plaintiff stole merchandise from the store, and that Plaintiff threw Greene out of Plaintiff's way to escape.   (Id. at 2.)  Because they had knowledge of actions by Plaintiff that could jeopardize their safety, the officers were on notice to take additional steps to ensure their own safety when pursuing and apprehending him, including heightened physical restraint.  Moreover, by describing his arrest with conclusory statements, Plaintiff fails to make a sufficient showing that the officers employed excessive force.

Constitution when they arrested him without a warrant. He argues that they acted "with hatred towards African American[s]" and supports this allegation by claiming that Laird called Plaintiff a racial slur while arresting him. In effect, Plaintiff is alleging unconstitutional racial profiling.

To establish an equal protection claim in a racial profiling context, a plaintiff is required to prove that the actions of the alleged profilers "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F. 3d 197, 205 (3d Cir. 2002) (collecting cases). Moreover, to prove a discriminatory effect, a plaintiff also must show that he "is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." Id. at 206 (citation omitted).

In this case, Plaintiff is an African-American male and thus a member of a protected class. However, based upon the facts in the second Amended Complaint, there is insufficient information as to whether he was treated differently from other similarly situated members of an unprotected class. Other than Plaintiff's conclusory remarks, there is no indication that the officers acted with malice towards him solely because he was African-American. Although repugnant, Laird's usage of a racial epithet does not rise to the level of an equal protection violation. Thus, the actions of Laird and members of the Springfield Police Department do not establish a plausible claim of discrimination in violation of the equal protection laws. Accordingly, the racial profiling claim will be dismissed.

### 5. Plaintiff Fails to State a Claim Against Springfield Township

In Count III, Plaintiff fails to adequately state a claim against Springfield Township because he is unable to show that violations of his constitutional rights arising from his May 18, 2017 arrest stemmed from a policy, custom, or practice of Springfield Township.

The United States Supreme Court has held that a municipality or local government entity can be held liable pursuant to Section 1983 under certain limited circumstances, but not on the basis of respondeat superior. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Rather, Monell established that a municipality is subject to liability under Section 1983 only when the violation of a plaintiff's federally protected rights can be attributable to the execution of a government's policy, practice, or decision of a final municipal policy maker. Id. at 690-91. Moreover, "a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).

Plaintiff's second Amended Complaint contains a protracted narrative of the events taking place on May 18, 2017, beginning with the placement of unpaid merchandise in his shopping bag at the Target location in Springfield, Pennsylvania, proceeding to his altercation with Dommonieke Greene and eventual arrest by Officer Boyd and others of the Springfield Police Department. Absent from his Amended Complaint, however, is any claim or facts establishing a claim that Springfield Township had a policy or practice which would create the constitutional violations he complains of, specifically an infringement of his Fourth Amendment rights. Without additional facts demonstrating that the Township had an official policy or custom, and that the policy or custom caused the deprivation of Plaintiff's constitutionally protected rights, the claim against Springfield Township must be dismissed.

**C. Plaintiff is Precluded From Raising Section 1983 Claims Against the Target Defendants Because They Are Not Persons Acting Under the Color of State Law**

As stated previously, Plaintiff is barred from raising Section 1983 claims for monetary and punitive damages against all Defendants under the Heck doctrine. In addition, his claims in Count IV against Target and Dommonieke Greene lack merit because they are not persons who were acting under the color of state law.

To state a Section 1983 claim, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Adkins, 487 U.S. 42, 48 (1988). In situations where a private individual or entity acts at the behest of the state, private action may be attributable to the state. A court uses a two-part test to determine whether a private action is attributable to the state:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).

The Third Circuit has held that a Section 1983 claim against a store and its employees will fail unless: "(1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause." Cruz v. Donnelly, 727 F.2d 79, 81 (3d Cir. 1984). In general, "merchants are not considered to be acting under the color of law for the purposes of

1983 when they detain a person suspected of shoplifting or other crimes, call the police, or make a citizen's arrest." <u>Caswell v. BJ's Wholesale Co.</u>, 5 F. Supp. 2d 312, 318 (E.D. Pa. 1998).

Here, Plaintiff alleges that Greene contacted the Springfield Police Department after he was unable to apprehend Plaintiff for purportedly committing retail theft.   (Doc. No. 22 at 2.) He claims that Greene provided inaccurate information to Officer Boyd when he said that Plaintiff was involved in a previous theft, that Plaintiff took the flat iron with him when he left Target, and that Plaintiff pushed Greene out of the way in order to escape.  (<u>Id.</u>)   However, Plaintiff's allegations are deficient in demonstrating how Greene, and his employer Target, acted under the color of state law.  They simply lack evidence of state action.  In this regard, Plaintiff has not advanced any facts evidencing a pre-arranged plan between the Springfield Police Department and Target.   Thus, Greene's actions on behalf of Target were merely that of a merchant's, as envisaged in <u>Caswell</u>.  Because Greene and Target did not act under the color of state law, Plaintiff fails to raise a claim against these Defendants under Section 1983.

### D.  Plaintiff's Claim of Defamation Against Greene Will Be Dismissed

At the end of his Amended Complaint, Plaintiff lists a host of claims, including defamation, without specifying the party responsible for this action.  The Court will construe Greene's statements about Plaintiff that were made to Officer Boyd as the source of Plaintiff's defamation claim.[18]   Plaintiff claims that Greene provided the Springfield Police Department with inaccurate information about him, including a purportedly false statement that Plaintiff was involved in a previous theft and that he took the flat iron from Target and pushed Greene to

---

[18] Plaintiff may also have intended the defamation claim to be alleged against Officer Justin Laird, who used a racial slur when assisting with Plaintiff's arrest.  However, the Third Circuit has held that "the law of defamation does not extend to mere insult" and that there is "a distinction between actionable defamation and mere obscenities, insults, and other verbal abuse."  <u>Beverly Enters., Inc. v. Trump</u>, 182 F.3d 183, 187 (1999).

escape.  (Doc. No. 22 at 2.)

To analyze a defamation claim, the Court must first determine which state's law applies. Steaks Unlimited, Inc. v. Deaner, 623 F.2d 264, 269-70 (3d Cir. 1980).  Here, the situs of the alleged defamatory incidents occurred in Pennsylvania, the alleged injuries occurred in Pennsylvania, and all parties appear to be citizens of Pennsylvania.  Accordingly, Pennsylvania law will be applied to analyze Plaintiff's defamation claim.

To support a claim for defamation under Pennsylvania law, a plaintiff must allege the following:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

Graboff v. Colleran Firm, 744 F.3d 128, 135 (3d Cir. 2014) (citations omitted).

The Court must first determine whether the statements made were capable of defamatory meaning.  Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001) (citations omitted). A communication is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Franklin Prescriptions, Inc. v. New York Times, 267 F. Supp. 2d 425, 434 (E.D. Pa. 2003) (citations omitted).

Here, Plaintiff's defamation claim fails.  Greene made the statements about Plaintiff for the purposes of notifying police of a potential theft suspect.   Under Pennsylvania law, "statements made by private parties solely to law enforcement officials in which an accusation of crime is made for the purpose of inducing prosecution of criminal charges are absolutely privileged as statements preliminary to judicial proceeding."  Pennoyer v. Marriott Hotel Servs.,

324 F. Supp. 2d 614, 619 (E.D. Pa. 2004). Thus, the privilege protects the communication made by Greene for the purpose of seeking police intervention in apprehending a crime suspect. Accordingly, Plaintiff's defamation claim fails and will be dismissed.

### E. Claims Against Officer Justin Laird, Health Services Administration, Deputy Warden of Operation (John Doe #1), Warden (John Doe #2), and the Upper Darby Police Department Will Be Dismissed

Plaintiff includes the following Defendants in his Amended Complaint: Justin Laird; Health Services Administration, Deputy Warden of Operation (John Doe #1), Warden (John Doe #2), and Upper Darby Police. (Doc. No. 22.) Upon review of the docket, however, these Defendants were not served with the Amended Complaint.[19] Under Rule 4(m) of the Federal

---

[19] On May 10, 2018, the Court ordered Plaintiff to submit a letter as to whether there was good cause for failing to serve these Defendants. (Doc. No. 29.) On May 31, 2018, Plaintiff filed a letter stating:

> On October 20, 2017, Plaintiff filed proper Amended Complaint and served against Justin Laird [Doc No. 22] with "proof and certificate of service" to be mail[ed] as follow[s]. Defendant Laird still failed to response [sic] to Plaintiff's First Amended Complaint. The failure to serve these Defendants listed was due to the lack of response by the Defendants to Plaintiff's complaint. Plaintiff properly execute[d] service of process of his complaint against all defendants. The U.S. marshal was not able to locate Defendant Health Services Administration due to address change; and after due diligent [sic], Plaintiff was unable to provide the current address of the Defendant Health Services Administration.

(Doc. No. 31 at ¶¶ 2-4.)

He also wrote that he did not receive a process receipt confirming whether Defendants Deputy Warden (John Doe #1) and Warden (John Doe #2) were served. He also states that the "Clerk's office told Plaintiff that the defendants' counsel will be serve [sic] electronically any time Plaintiff's Complaint is [sic] been filed." (Id. ¶ 7.)

Although it is somewhat difficult to decipher what Plaintiff is alleging in his letter, Plaintiff appears to assert that all Defendants have been properly served. However, upon review of the docket, no certificate of service has been filed on Defendants Laird, Health Services Administration of George W. Hill Correctional Facility, Deputy Warden (John Doe #1), and Warden (John Doe #2), and the Upper Darby Police Department. Accordingly, the claims against these Defendants will be dismissed.

Rules of Civil Procedure, the Court must dismiss the action without prejudice against any Defendant who has not been timely served.  Fed.  R. Civ. P. 4(m).

### 1.   Claims Against Officer Justin Laird

In addition to Plaintiff's claims for false arrest being barred by <u>Heck v. Humphrey</u>, as discussed above, the Court has already determined that Officer Laird's actions were supported by probable cause and the officer did not violate Plaintiff's constitutional rights.  Additionally, Plaintiff failed to timely serve Defendant Laird and his claims will also be dismissed under Federal Rule of Civil Procedure 4(m).

### 2.   Claims Against Health Services Administration, Deputy Warden of Operation (John Doe #1), and Warden (John Doe #2)

Defendants Health Services Administration, Deputy Warden of Operation (John Doe #1), and Warden (John Doe #2) have also not been timely served, and Plaintiff has failed to show good cause for the failure of service.  Nevertheless, in light of Plaintiff's pro se status, the Court will analyze the claims against these Defendants.  However, because Plaintiff only provides conclusory allegations against Health Services Administration, Deputy Warden of Operation, and the Warden of the George W. Hill Correctional Facility, the claims against these Defendants will be dismissed.

In Count V, Plaintiff alleges that he received inadequate medical attention from the Health Service Administration[20] after sustaining injuries from his arrest.  (Doc. No. 22 at 5.) Without further elaboration, Plaintiff asserts that he "suffered from cold to his lungs, and severe pain to his head, back, and [ribs.]"  (<u>Id.</u>)  He also describes the Intake Process Unit where he first arrived after his preliminary arraignment as "overcrowded and unsanitary."  (<u>Id.</u>)  Plaintiff claims

---

[20] Presumably this claim refers to the actions of employees of the health services division of the George W. Hill correctional facility where Plaintiff is currently incarcerated.

that he was not permitted to shower for four days and was strip-searched twice.  (Id. at 6.)  He asserts no further allegations against the Warden or Deputy Warden of the correctional facility.

To state a claim for damages against the Health Services Administration under the Eighth Amendment, Plaintiff must demonstrate a deliberate indifference to a serious medical condition. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  The standard established in Estelle has two prongs: (1) deliberate indifference on the part of prison officials, and (2) the prisoner's medical needs must be serious.  Id.  Plaintiff claims that his medical condition was serious because of the injuries he sustained when arrested but provides no other facts to show his medical needs were serious.  Whether or not his medical needs were in fact serious, the Court will turn to analysis under the deliberate indifference prong of Estelle.

### a) Deliberate Indifference

Deliberate indifference requires that a defendant "knows of and disregards an excessive risk to an inmate's health or safety."  Dominguez v. Governor of Pa., 574 F. App'x 63, 65 (3d Cir. 2014).  The prison official "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and draw the inference."  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  However, "[n]either a prisoner's subjective dissatisfaction with the care provided nor his disagreement with medical staff's professional judgment is . . . sufficient to establish deliberate indifference."  Davis v. Jail, No. 15-8154, 2016 WL 676374, at *3 (D.N.J. Feb. 18, 2016) (citing Hairston v. Dir. Bureau of Prisons, 563 F. App'x 893, 895 (3d Cir. 2014)); see also White v. Napolean, 897 F.2d 103, 110 (3d Cir. 1990)).

Here, Plaintiff has failed to allege specific facts to show that prison officials acted with deliberate indifference to his health or safety.  All that he alleges is that when he first arrived at

the Springfield Police Station, "he suffered from cold to his lungs, and severe pain to his head, back and [ribs.]" (Doc. No. 22 at 5.) He does not describe his injuries in more detail. Plaintiff merely states that his requests for medical care were not responded to timely. He does not allege that medical attention was entirely denied. He also does not allege that he suffered greater harm because of the delay in receiving medical help. Consequently, because Plaintiff has failed to allege sufficient facts suggesting deliberate indifference to his medical needs, the claim against the Health Services Administration will be dismissed.

### b) Prison Conditions

Plaintiff complains that the Intake Process Unit "was overcrowded and unsanitary." (Doc. No. 22 at 5.) He further describes the unit as a "tank with more than twenty inmates" where he had to sleep "on a cold and dirty floor beside the toilet." (Id.) He also adds that he was not permitted to take a shower from May 19 to May 22, 2017. (Id. at 6.) Although Plaintiff does not articulate the particular civil rights violation at issue, the Court construes Plaintiff's grievance as a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

"The Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1970) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). On the other hand, "[u]nsanitary prison conditions may result in an Eighth Amendment violation." Drumgo v. Radcliff, 661 F. App'x 758, 760 (2016) (citations omitted). The Third Circuit has held that, in order for prison conditions to constitute cruel and unusual punishment, they must involve "the wanton and unnecessary infliction of pain, [or] be grossly disproportionate to the severity of the crime warranting imprisonment." Peterkin v. Jeffes, 855 F. 2d 1021, 1023 (3d Cir. 1988) (citing Rhodes v. Chapman, 452 U.S. 337 (1981)). To make an Eighth Amendment claim, a plaintiff

needs to show that a prison official (1) deprived an inmate of the minimal civilized measure of life's necessities and (2) acted with deliberate indifference to the inmate's health or safety. Farmer, 511 U.S. at 834 (citations and quotations omitted). However, the Eighth Amendment's ban against cruel and unusual punishment "does not apply until an inmate has been both convicted of and sentenced for his crimes." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (citations omitted). Nevertheless, an unsentenced inmate is still afforded "at a minimum, to no less protection than [what] a sentenced inmate is entitled to under the Eighth Amendment." Id. (citing Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000)).[21]

In this case, Plaintiff takes issue with the conditions of the Intake Process Unit where he was initially and temporarily detained, noting the large quantity of inmates in one unit and his proximity to the toilet used by other inmates. However, "[t]he mere presence of an unsanitary condition at a given point in time does not rise to the level of an Eight Amendment violation." Walker v. Regan, Civ. A. No. 13-7556, 2018 WL 347685, at *3 (E.D. Pa. Jan. 9, 2018). In Peterkin, inmates argued that the small square footage of cells, inadequate ventilation, and poor lighting at the prison constituted cruel and unusual punishment. 855 F. 2d at 1026-27. The Third Circuit, however, agreed with the district court and found that there was no evidence of any "dangerous . . . intolerable, or shockingly substandard" conditions and thus there was no Eighth Amendment violation with respect to prison conditions. Id. at 1027.

Similarly here, Plaintiff does not show that the conditions invited danger or risk of harm. He does not assert further facts to show that these conditions implicated any infliction of pain by prison officials or that his confinement in the unit was grossly disproportional to his crimes of

---

[21] The facts alleged in the second Amended Complaint do not indicate whether Plaintiff had been sentenced during his detention in the Intake Process Unit. Regardless, the analysis for whether he was subjected to cruel and unusual punishment while he was awaiting sentencing, or had already been sentenced is the same in this case.

retail theft and resisting arrest. Furthermore, Plaintiff only alleges facts with respect to his temporary detention in the Intake Process Unit and do not refer to an extended period of confinement. See Hubbard v. Taylor, 538 F. 3d 229, 233 (3d Cir. 2008) (examining whether prison conditions "cause inmates to endure such genuine privations and hardship over an extended period of time.") (citation omitted). Accordingly, the claim of unsanitary prison conditions will be dismissed.

Plaintiff also mentions that he was stripped search twice. (Id. at 6.) However, correctional facilities have a strong interest in preventing contraband from infiltrating their premises. [22] Thus, they "must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. at 328. In Florence v. Board of Chosen Freeholders, plaintiff brought a Section 1983 claim, arguing that his strip-search violated his Fourth Amendment rights. Id. The Supreme Court upheld the strip-search regulations, noting that "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process." Id. at 322. Accordingly, the Court finds that the prison facilities standard protocols did not violate any of Plaintiff's constitutional rights and the claims against the Warden and Deputy Warden of the George W. Hill correctional facility will be dismissed.

### 3. Claims Against the Upper Darby Police Will Be Dismissed

With respect to the Defendant Upper Darby Police, the only facts alleged by Plaintiff in relation to this Defendant is that the Springfield law enforcement officers summoned the Upper

---

[22] Plaintiff's allegations related to the "Intake Process Unit" took place shortly after his preliminary arraignment in his state criminal case, from approximately May 19, 2017 to May 22, 2017. He was not formally arraigned until June 28, 2017.

Darby Police Department's K-9 Unit to search for Plaintiff. Aside from this allegation, Plaintiff alleges nothing further related to the Upper Darby Police.

The Court will <u>sua</u> <u>sponte</u> dismiss the claim against Upper Darby Police in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiff has failed to state a claim on which relief may be granted. For actions filed by a plaintiff proceeding <u>in forma pauperis</u>, § 1915(e)(2)(B)(ii) provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." § 1915(e)(2)(B)(ii). The standard for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as the standard under Federal Rule of Civil Procedure 12(b)(6). <u>Allah v. Seiverling</u>, 229 F.3d 220, 223 (3d Cir. 2000). That is, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ethypharm S.A. France</u>, 707 F.3d at 231 n.14 (quoting <u>Sheridan</u>, 609 F.3d at 262 n.27). In sum, the allegations against the Upper Darby Police fail to state a plausible claim upon which relief may be granted.

**A. Claims Against All Defendants Will Be Dismissed**

Finally, because further amendment of Plaintiff's allegations would be futile, the Court will dismiss this case without granting leave to file another amended Complaint.

On September 19, 2017, Plaintiff was granted leave to file an Amended Complaint. (Doc. No. 9.) He did so on October 13, 2017. (Doc. No. 18.) He then filed a second Amended Complaint on October 20, 2017. (Doc. No. 22.) However, as mentioned, the facts in Plaintiff's original Complaint (Doc. No. 4) and the second Amended Complaint (Doc. No. 22) are similar, with the exception of a few more details. "When a plaintiff does <u>not</u> seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend . . . unless amendment would be inequitable or futile." <u>Grayson v.</u>

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original). "[A] district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted." Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)). Finally, "[a]mendment of the Complaint is futile if the amendment will not cure the deficiency in the original Complaint or if the Amended Complaint cannot withstand a renewed Motion to Dismiss." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (1988).

Here, the Court has considered Plaintiff's claims and finds that Plaintiff would be unable to cure the deficiencies in his Section 1983 claims against Defendants. The second Amended Complaint contains several factual allegations but fails to state a well-pleaded claim upon which relief may be granted. Accordingly, leave to amend would be futile and his claims will be dismissed.

## V.    CONCLUSION

For these reasons, Defendants' Motions to Dismiss (Doc. Nos. 25, 26) will be granted and the Amended Complaint (Doc. No. 22) will be dismissed with prejudice. Plaintiff's Motion for Appointment of Counsel (Doc. No. 24) will also be dismissed as moot. An appropriate Order follows.